FILED

2007 Feb-01  AM 10:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **DOUGLAS PRICE, JAMES PAUL PRICE, AND JESSICA PRICE,** a minor, who sues by and through her father and next friend Douglas Price, } } } } | |
| **Plaintiffs,** } } | **Case No. 3:05-CV-2512-RDP** |
| **v.** } } | |
| **CITY OF CHEROKEE, ALABAMA,** a municipal corporation, and **JEFF AYCOCK,** } } } } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

On June 15, 2006, Magistrate Judge Armstrong filed his report and recommendation in the above-styled cause (Doc. # 21), recommending that this court grant Defendant Aycock's Motions to Dismiss (Docs. # 8, 15)[1] as to Counts I, II, and VIII of the Complaint and deny Defendant Aycock's Motions to Dismiss as to Counts VII and IX.   Although objections to the report and recommendation were due to be filed by June 29, 2006, *see* Fed. R. Civ. P. 72(b), no objections were filed.

As a threshold legal matter, the court notes that the Supreme Court has made clear that district courts are not *required* to conduct an independent review of a magistrate report and recommendation when no objections have been filed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985)("It

---

[1] Defendant Aycock's first motion to dismiss addresses the claims pled in the initial complaint (*compare* Docs. # 1 and 8), while his second motion to dismiss addresses the additional claims pled in the amended complaint (which only alleged new claims and did not restate the earlier claims) (*compare* Docs. # 14 and 15).

does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."); *see also* Fed. R. Civ. P. 72(b). Nevertheless, nothing in *Thomas* precludes this court from reviewing the report and recommendation *sua sponte* under an appropriate standard of review. *Thomas* 474 U.S. at 154. In fact, Justice Marshall, who wrote for the Court in *Thomas*, emphasized: "The District Judge has jurisdiction over the case at all times. He retains full authority to decide whether to refer a case to the magistrate, to review the magistrate's report and to enter judgment.... Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge *sua sponte* or at the request of a party under a *de novo* or any other standard." *Thomas* 474 U.S. at 155. While *de novo* review is, therefore, not required, the court will review Magistrate Judge Armstrong's recommendations *de novo* in the interest of giving Plaintiffs' arguments the fullest consideration.

Accordingly, having now carefully reviewed and considered *de novo* all of the materials in the court file, including the report and recommendation, the court reaches the following conclusions. First, with respect to the recommendation that Defendant Aycock's motions to dismiss be denied as to Counts VII and IX, the court agrees with the magistrate's report and recommendation and therefore is of the opinion that the report is due to be adopted, and the recommendation accepted, with respect to those counts. With respect to the magistrate's recommendation that Defendant Aycock's motions to dismiss be granted as to Counts I, II, and VIII and those counts dismissed, the court declines to adopt or accept the report and recommendation and therefore declines to dismiss those counts.

2

A detailed explanation of the court's decision to diverge from the magistrate report and recommendation is outlined below, following a recitation of the proper standard of review and a summary of the relevant facts as alleged in the complaint.

## I.     Standard of Review_

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief may be granted.  FED. R. CIV. P. 12(b)(6).  A court may dismiss a complaint under Rule 12(b)(6) only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party."  *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002) (citing *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998)).  "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal."  *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (citing *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc)).  Further, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory."  *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis in original).  Nevertheless, conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal.  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002); *see Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) ("[A] plaintiff must plead

specific facts, not mere conclusional allegations, to avoid dismissal for failure to state a claim.  We will thus not accept as true conclusory allegations or unwarranted deductions of fact.") (internal citations omitted); *Kirwin v. Price Commc'ns. Corp.*, 274 F. Supp. 2d 1242, 1248 (M.D. Ala. 2003) ("[A]lthough the complaint must be read liberally in favor of the plaintiff, the court may not make liberal inferences beyond what has actually been alleged."), *aff'd in part*, 391 F.3d 1323 (11th Cir. 2004).

## II.    Relevant Facts as Alleged in Plaintiff's Complaint

In their initial complaint, Plaintiffs Douglas Price, James Paul Price (son of Douglas); and Jessica Price (minor daughter of Douglas) brought the following claims in this case against the City of Cherokee, Alabama, and Jeff Aycock, a police officer for the City of Cherokee: (1) Count I - battery against Jessica; (2) Count II - violation of Jessica's civil rights under 42 U.S.C. § 1983; (3) Count III - violation of James' civil rights under § 1983; (4) Count IV - malicious prosecution against James; (5) Count V - defamation of James; (6) Count VI - abuse of process against Douglas; and (7) Count VII - violation of Douglas' civil rights under § 1983.  (Doc. # 1).  Plaintiffs later amended their complaint to add Count VIII, which contains additional allegations concerning the violation of Jessica's civil rights, and Count IX, which contains additional allegations concerning the violation of Douglas' civil rights.  (Doc. # 14).

Plaintiffs allege the following in their complaint.  On or about December 9, 2003, Cherokee Police Officer Jeff Aycock did unlawfully seduce, take advantage of, and have sexual relations or intercourse with or against Jessica Nicole Price, then just sixteen years of age.  (Doc. # 1, ¶ 6).  After Jessica Nicole Price's father, Douglas Price, discovered that Officer Aycock was having sexual relations with his minor daughter, Douglas Price went to the City Council of Cherokee to complain

about the actions of Officer Aycock.  (Doc. # 1, ¶ 7).    Douglas Price was advised by the City Council to file a claim with the City of Cherokee under Alabama Code §11-47-23 and §§11-47-190 through 192, on a claim form provided by the City Council.  (Doc. # 1, ¶ 8).  With knowledge of the pending claim, and in an effort to either intimidate Douglas or otherwise pressure Douglas into not filing a claim, or for some other wrongful or malicious motive, Officer Aycock did publish and make known false statements regarding James, son of Douglas and brother of Jessica, to-wit: That James had, on or about February 14, 2004, entered the Cherokee Police Department, pulled a gun on Officer Aycock, ordered Officer Aycock to lay face-down on the floor, threatened Officer Aycock, and shot a bullet into a wall, which, according to Officer Aycock, narrowly missed Aycock's head.  (Doc. # 1, ¶ 9).

Plaintiffs further allege that on or about February 15, 2004, Officer Aycock, caused James to be arrested, jailed and charged with attempting to commit the crime of murder, knowing these charges to be untrue.  (Doc. # 1, ¶ 10).  The charges were later dismissed.  (Doc. # 1, ¶ 11).  Officer Aycock pleaded guilty to the charge of filing a false report in Colbert County District Court in connection with the false accusations made against James.  (Doc. # 1, ¶ 12).

Plaintiffs claim that Officer Aycock had a history of sexual relations with minor females, both in the City of Cherokee and in previous employments, and further allege that fact was known or reasonably should have been known to the City of Cherokee.  (Doc. # 1, ¶ 13).  Thus, Plaintiffs aver that the City of Cherokee failed to properly investigate Officer Aycock prior to his employment, failed to properly supervise him, ignored other complaints about his behavior, and otherwise demonstrated a policy and custom of reckless indifference to his actions.  (Doc. # 1, ¶ 14).

Aycock has only moved to dismiss Count I (battery against Jessica), Count II (violation of Jessica's civil rights under 42 U.S.C. § 1983), Count VII (violation of Douglas' civil rights under § 1983), Count VIII (additional allegations concerning the violation of Jessica's civil rights), and Count IX (additional allegations concerning the violation of Douglas' civil rights).  (Docs. # 8, 15).

## III.  Substantive Analysis of Defendant Aycock's Motions to Dismiss

### A.  Counts VII and IX (Section 1983 Violation of Douglas' Civil Rights)

In Counts VII and IX of his complaint, Douglas alleges that Aycock, under color of law and authority, violated Douglas' right to freedom from coercion by law enforcement by attempting to intimidate or coerce Douglas into waiving a claim against the City of Cherokee to be asserted on behalf of his minor daughter.  (Doc. # 1, Count VII).  Specifically, Douglas alleges that Aycock charged his son with attempt to commit murder, arrested him, and subjected him to illegal detention, public shame, and ridicule.  (Doc. # 1, Counts VII).  Douglas further claims that Aycock violated his right to freedom of speech by attempting to intimidate or coerce him to waive his claim against the City by falsely charging his son with a crime. (Doc. # 14, Count IX).

As the court noted earlier, it is of the opinion that with respect to the magistrate's recommendation that Defendant Aycock's Motions to Dismiss be denied as to Counts VII and IX, the report is due to be adopted, and the recommendation accepted.  Accordingly, no further analysis of these claims is required here.

### B.  Count I (State Law Battery Against Jessica)

In Count I of the complaint, Jessica alleges that Officer Aycock committed the state law tort of battery by willfully and unlawfully exerting his legal authority over Jessica Nicole Price, a minor, and, as a consequence thereof, unlawfully seducing Jessica Nicole Price and having sexual relations

6

with her.   (Doc. # 1, Count I).   Under Alabama law, a plaintiff alleging assault and battery must prove "(1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner." *Harper v. Winston County*, 892 So.2d 346, 354 (Ala. 2004).   In their opposition to Defendant's motion to dismiss, Plaintiffs maintain that Aycock's unlawful seduction of Jessica was conducted without her legal consent and in a harmful or offensive manner because it constitutes "sexual misconduct" in violation of Ala. Code § 13A-6-65.[2]   A person commits the crime of sexual misconduct if, "[b]eing a male, he engages in sexual intercourse with a female ... with her consent where consent was obtained by the use of any fraud or artifice." Ala. Code § 13A-6-65.   Specifically, Plaintiffs argue that the actions of Aycock in getting Jessica into his car and having sexual intercourse with her meets the "any fraud or artifice" test.[3]

The magistrate judge found otherwise, opining that while the complaint alleges that Aycock employed fraud to get Jessica to follow him to a field and get into his car, it does not allege that he

_____

[2] Considering Plaintiff's reference to Ala. Code § 13A-6-65, the court is not persuaded by Defendant's argument that this count, although styled as an action for battery, is actually an action for the tort of seduction which is no longer cognizable in the state of Alabama.   As Plaintiffs concede, "Jessica Price is not making an attempt to file a seduction claim against the Defendant. The 'seduction' referred to in the complaint and the amended complaint refers to the actions of a man wearing a uniform with a badge, and driving a police vehicle, directing a high school girl, age 16, to follow him to a remote place to discuss some non-existent traffic tickets, and during the course of this and while taking advantage of her with his position of authority, engaging her in sexual intercourse." (Doc. # 12, at 7).

[3] Plaintiff also cites to *Grayson v. State*, 824 So.2d 804 (Ala. Crim. App. 1999), a case in which the Court of Criminal Appeals considered whether a hitchhiker who willingly got into a vehicle could be considered as having been kidnapped.   The court held "while it is true that an initial consent may be withdrawn during the course of a kidnapping, in the present case, the initial consent was obtained by fraud when the appellant and his accomplices indicated that they would take the victim to Louisiana." *Grayson*, 824 So.2d at 818.

used fraud or artifice to get Jessica to engage in sexual intercourse with him. (Doc. # 21, at 6-8). Although the report and recommendation acknowledges the complaint allegation that Jessica's consent to sexual intercourse "occurred directly as a result of the position of power and authority exerted over her," (Doc. # 21, at 7-8), the magistrate judge found the complaint allegations insufficient to demonstrate Aycock's use of "fraud or artifice" to obtain Jessica's consent to engage in sexual intercourse.[4]

Considering the Rule 12(b)(6) standard, this court disagrees with the magistrate judge's analysis. In this case, when the court "accept[s] all well-pleaded factual allegations in the complaint as true and construe[s] the facts in a light most favorable to [Plaintiffs]," *Dacosta*, 304 F.3d at 1047, the court cannot conclude that Plaintiffs can prove no set of facts in support of the claim that Aycock committed sexual misconduct, and thus battery, by using fraud or artifice to get Jessica to engage in sexual intercourse with him. Although the complaint may not detail exactly what happened once Jessica entered the car, it does allege that Aycock lured Jessica, a minor, to his car in a field under the guise that he wanted to discuss certain tickets with her (which did not exist) and unlawfully obtained her consent to sexual relations by exerting the force of his otherwise lawful authority over her. (Doc. # 1, at 5-6; Doc. # 14, at 2). Under the Rule 12(b)(6) standard and familiar requirements of notice pleading, any further detail is simply not required at this stage of the litigation. Thus, the court finds that Defendant Aycock's motion to dismiss is due to be denied as to Count I of the

---

[4] The magistrate judge noted: "In fact, the complaint does not state that Jessica believed she was being forced to have intercourse with Aycock. Jessica does not state, for example, that she was afraid that Aycock would hurt her or file false charges against her if she did not agree to have intercourse with him. It is believed that some such allegation is legally required to state a claim of battery." (Doc. # 21, at 8).

Plaintiffs' complaint because Plaintiffs have stated a claim for battery in the form of sexual misconduct upon which relief can be granted.

### C.      Counts II and VIII (Section 1983 Violation of Jessica's Civil Rights)

In Counts II and VIII of the complaint, Jessica, by and through her father as next friend, asserts that Officer Aycock unlawfully seduced her, a minor, and unlawfully obtained her consent to sexual relations by exerting the force of his otherwise lawful authority over her.  (Doc. # 1, Count II).  As a consequence, Jessica alleges that she was subjected to unlawful touching, battery, and intentional inflection of emotional distress in violation of the Fourteenth Amendment.  (Doc. # 1, Count II; Doc. # 14, Count VIII).  Finally, Jessica alleges that just prior to the alleged seduction, Aycock told her that he wanted to discuss traffic tickets with her and asked her to follow him in his car, which was located in a field.  Thereafter, Aycock asked her to get into his car to discuss the tickets and when she did, Aycock told her there were no tickets but he wanted to "be with her." (Doc. # 14, Count VIII).[5]

Aycock has asserted the defense of qualified immunity in response to the Section 1983 claims outlined in Counts II and VIII.  (Docs. # 8, 15). The magistrate found that Officer Aycock is due the protection of qualified immunity:

> The first question is whether a legal wrong was committed by the officer. As it has been decided that the complaint does not state a cause of action for the tort of battery, which is the basis for this § 1983 cause of action, there is not a violation of the United States Constitution. Moreover, although having sexual intercourse clearly is not part of a police officer's duties, "[n]o law would have put him on notice that his alleged seduction of a female over the age of consent violated her clearly established

---

[5] As part of this count, Jessica also claims that the City of Cherokee, with reckless indifference or neglect, demonstrated a custom or policy of failure to properly hire, train or supervise its police personnel. (Doc. # 1, Count II).

constitutional rights." Defendant's Brief in Support of Motion to Dismiss (Doc. 16), p. 8.   These counts are due to be dismissed.

(Doc. # 21, at 14).   For the reasons outlined below, the court disagrees.

### 1.        Standards for Evaluating a Defense of Qualified Immunity

The purpose of qualified immunity is "to ensure that before they are subjected to suit, [police] officers are on notice [that] their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001). Therefore, "the salient question . . . is whether the state of the law [at the time of the events in question] gave [the officer] fair warning that [his] alleged treatment of [the plaintiff] was unconstitutional." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1278 (11th Cir. 2004) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).   Indeed, the defense is so broad that only those officers who are "plainly incompetent and those who knowingly violate the law" are required to defend against individual liability claims.   *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1366 (11th Cir. 1998).   The Eleventh Circuit has cautioned that, "[b]ecause qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *Lassiter v. Alabama A & M University, Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir.1994).

To be entitled to qualified immunity, a defendant must establish "that he [] acted within the scope of discretionary authority when the allegedly wrongful acts occurred." *Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1236 (11th Cir.1992). The Eleventh Circuit has made clear that, with respect to discretionary authority, "[i]nstead of focusing on whether the acts in question involved the exercise of actual discretion, we assess whether they are of a type that fell within the employee's job responsibilities." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

10

"[T]he inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an untenable tautology." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir.1998). The term 'discretionary authority' includes all acts of a governmental official that are (1) undertaken pursuant to the performance of official duties and (2) within the scope of the official's authority. *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir.1994). In other words, the state actor "must have been performing a function that, but for the alleged constitutional infirmity, would have fallen with his legitimate job description." *Holloman*, 370 F.3d at 1265-66. Moreover, "[e]ach government employee is given only a certain 'arsenal' of powers with which to accomplish [his] goals . . . . [and therefore,] pursuing a job-related goal through means that fall outside the range of discretion that comes with an employee's job is not protected by qualified immunity." *Holloman*, 370 F.3d at 1266-67.

Once this is proven - and the court assumes without deciding in this case that Officer Aycock acted within his discretionary authority[6] - the burden shifts to the plaintiff to show that qualified immunity is not applicable. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir.2004). "In order to demonstrate that the official is not entitled to qualified immunity, the plaintiff must show two things: (1) that the defendant has committed a constitutional violation and (2) that the constitutional right the defendant violated was 'clearly established' at the time he did it." *Crosby*,

---

[6] According to the complaint allegations, Aycock was on duty as a police officer and engaged in conversation with a member of the public regarding law enforcement activities at the time he saw Jessica and decided to pursue her. Although the court notes that Aycock's actions immediately thereafter - telling Jessica to follow him to his car, which was parked in a field, to discuss parking tickets that never existed – do raise the question of whether Aycock was pursuing a job-related goal through means that fall outside the range of discretion that comes with his job, the court has opted to leave this issue for another day and to assume, without deciding, that Aycock was acting within his discretionary authority.

394 F.3d at 1332. "The threshold inquiry is whether plaintiff's assertions, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). If the court determines that the plaintiff has not alleged a deprivation of a constitutional right, then the inquiry ends. *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998).

However, if the court determines that the plaintiff has, in fact, alleged a deprivation of a constitutional right, then further inquiry is needed as to "whether that right allegedly implicated was clearly established at the time of the events in question." *Lewis*, 523 U.S. at 841 n. 5. "Clearly established" rights must be "developed [] in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).[7] "While officials must have fair warning that their acts are unconstitutional, there need not be a case 'on all fours,' with materially identical facts, before we will allow suits against them. A principle of constitutional law can be 'clearly established' even if there are 'notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct at issue violated constitutional rights.'" *Holloman v. Harland*, 370 F.3d 1252, 1277 (11th Cir. 2004)(quoting *United States v. Lanier*, 520 U.S. 259, 269 (1997) and *Hope v. Pelzer*, 536 U.S. 730 (2002)). As the Eleventh Circuit has explained:

> The Supreme Court, in *Hope*, cautions against a "rigid gloss on the qualified immunity standard" that would require materially similar, preexisting cases in all circumstances when the qualified immunity defense is to be overcome. *Hope*, 122 S.Ct. at 2512. Such a "rigid gloss" would be in variance with the law of the Supreme

---

[7] There is a temporal requirement related to this inquiry. A plaintiff must show that a reasonable public officer would not have believed his actions to be lawful in light of law that was clearly established *at the time* of the purported violation. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Johnson v. Clifton*, 74 F.3d 1087, 1091 (11th Cir. 1996).

> Court and the law of this Circuit. We have denied qualified immunity in the absence
> of precedents with similar facts. We have said, in the context of excessive force
> cases, that an official's conduct could run so afoul of constitutional protections that
> fair warning was present even when particularized case law was absent: "the
> official's conduct was so far beyond the hazy border between excessive and
> acceptable force that [the official] had to know he was violating the Constitution
> even without case law on point." *Priester*, 208 F.3d at 926 (internal quotation marks
> omitted and second alteration in original).

*Willingham v. Loughnan*, 321 F.3d 1299, 1303 (11th Cir. 2003).   Only Supreme Court, Eleventh

Circuit, and Alabama Supreme Court cases can "clearly establish" the law in this Circuit.   *Thomas*

*v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003).

### 2.    Evaluation of Whether Plaintiffs Have Alleged a Constitutional Deprivation

In this case, Plaintiffs have alleged that Aycock's actions - luring Jessica to his police car in

a field under the guise that he wanted to discuss certain tickets with her (which did not exist) and

unlawfully obtaining her consent to sexual relations by exerting the force of his otherwise lawful

authority over her - constitute a violation of the Fourteenth Amendment's right to substantive due

process. (Doc. # 1, at 5-6; Doc. # 14, at 2).   The substantive due process component of the

Fourteenth Amendment protects fundamental rights that are so "implicit in the concept of ordered

liberty" that "neither liberty nor justice would exist if they were sacrificed." *Palko v. Connecticut*,

302 U.S. 319, 325-26 (1937); *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir.1994) (en banc). The

Supreme Court has recognized that fundamental rights include those guaranteed by the Bill of Rights

as well as certain "liberty" and privacy interests implicit in the due process clause and the penumbra

of constitutional rights. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).   These special

"liberty" interests include "the right[] to bodily integrity." *Glucksberg*, 521 U.S. at 720.   In fact, the

Supreme Court has held that "[e]very violation of a person's bodily integrity is an invasion of his

13

or her liberty." *Washington v. Harper*, 494 U.S. 210, 237 (1990). Courts must analyze a substantive due process claim by first crafting a  careful description of the asserted right and then determine whether the asserted right is "one of 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.' " *Williams v. Attorney Gen. of Alabama*, 378 F.3d 1232, 1239 (11th Cir.2004) (quoting *Glucksberg*, 521 U.S. at 720-21).

In this case, the Supreme Court has made clear that the right to bodily integrity includes the right to be free from unauthorized and unlawful physical abuse at the hands of the state by a state official acting or claiming to act under color of law, when the alleged conduct is of such nature as to shock one's conscience. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). With respect to incidents of a sexual nature, like this case, the Eleventh Circuit has previously recognized that under certain circumstances, a rape of a person by a state actor or official can violate the Constitution and serve as the basis for a suit under § 1983. *Griffin v. City of Opa-Locka,* 261 F.3d 1295, 1303 (11th Cir. 2001)(finding that City Manager violated Constitution by harassment and rape of city official); *Almand v. DeKalb County, Ga.*, 103 F.3d 1510, 1512 (11th Cir. 1997)(finding that rape by police officer violated Fourteenth Amendment substantive due process rights); *Parker v. Williams*, 862 F.2d 1471 (11th Cir.1989)(involving rape by uniformed deputy of woman in his custody); *see also Hartley v. Parnell,* 193 F.3d 1263, 1268-69 (11th Cir.1999) (in section 1983 sexual abuse case, assuming, without deciding, that male teacher deprived female student of substantive due process rights, then proceeding with the analysis to determine whether school principal caused that deprivation).

14

Although the circumstances in this case do not, under Alabama law, technically constitute rape,[8] they do nonetheless shock the conscience.  If the Constitution protects a individual from rape by a police officer, then surely the Constitution protects a sixteen-year old from a police officer who uses the power of his position and authority to lure her into his car and obtain her "consent" to sexual intercourse under the false pretense of official business.  Other federal courts have interpreted the Fourteenth Amendment's interest in  "bodily integrity" to include the right to be free from sexual misconduct at the hands of a state actor where consent to the sexual activity was obtained illegally. *See, e.g., Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 611 (8th Cir.1999) (finding that minor student who had consensual sexual relations with her teacher stated a substantive Due Process claim to be free from bodily harm and sexual molestation); *Doe v. Claiborne County*, 103 F.3d 495, 506 (6th Cir.1996) (finding that where a 15 year old student had consensual sexual intercourse with her teacher, "every court of appeals that has had the opportunity to consider the issue has logically recognized that the right to be free from sexual abuse at the hands of a public school teacher is clearly protected by the Due Process Clause of the Fourteenth Amendment"); *Doe v. Taylor Ind. Sch. Dist.*, 15 F.3d 443, 451 (5th Cir.1994) (finding that minor student who was had consensual sexual intercourse with her teacher "clearly was deprived of a liberty interest recognized under the substantive due process component of the Fourteenth Amendment"); *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 727 (3d Cir.1989) (holding student's "right to bodily integrity under the Due Process Clause [encompasses] a student's right to be free from sexual assaults by his or her teachers.").

_____

[8] *See* Code of Alabama (1975), § 13A-6-62(a)(1) (defining rape as the intercourse between a male over the age of 18 with a female "less than 16").

15

While cognizant of the Eleventh Circuit's admonishment to "take seriously the Supreme Court's caution against expanding the concept of substantive due process" and not to use the Fourteenth Amendment "through Section 1983 as a 'font of tort law' to convert state tort claims into federal causes of action," *Waddell v. Hendry County Sheriff's Office*, 329 F.3d 1300, 1304-05 (11th Cir. 2003), the court finds that, taken as true, the allegations of sexual misconduct in this case do "shock the conscience," and do meet the threshold required for stating a claim for a violation of a liberty interest recognized under the substantive due process component of the Fourteenth Amendment. *See, e.g. County of Sacramento*, 523 U.S. at 846. Although it is true that not all torts under state law are constitutional torts, the fact that a plaintiff's allegations "may coincide with state law rights to some degree" does not bar a plaintiff from asserting a "constitutionally defined" violation of the "Fourteenth Amendment due process right to liberty, which includes the right to be free from sexually motivated physical assaults." *Romero v. City of Clanton*, 220 F.Supp.2d 1313, 1316 (M.D. Ala.2002). Such is the case here.

### 3.    Evaluation of Whether that Right was Clearly Established

Having determined that the complaint allegations state a deprivation of constitutional right, the court must now analyze whether that right was clearly established at the time of the events in question. As noted earlier, the Eleventh Circuit has reiterated that while officials must have "fair warning" that their acts are unconstitutional, "there need not be a case 'on all fours,' with materially identical facts, before we will allow suits against them. A principle of constitutional law can be 'clearly established' even if there are 'notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct at issue violated constitutional rights.'" *Holloman v. Harland*, 370 F.3d 1252, 1277 (11th

Cir. 2004)(quoting *United States v. Lanier*, 520 U.S. 259, 269 (1997) and *Hope v. Pelzer*, 536 U.S. 730 (2002)).

Long before the events in this case transpired on or about December 9, 2003, the Supreme Court had made clear that the right to bodily integrity includes the right to be free from unauthorized and unlawful physical abuse at the hands of the state by a state official acting or claiming to act under color of law, when the alleged conduct is of such nature as to shock one's conscience. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).[9]  Accordingly, the court finds that, even in the absence of a materially identical substantive due process case from the Supreme Court, Eleventh Circuit, or Alabama Supreme Court that involved sexual misconduct through illegally obtained consent, the actions of Aycock - as alleged in the complaint and taken as true for purposes of the relevant motion - run so afoul of constitutional protections that fair warning was present even when particularized case law was absent. *Willingham*, 321 F.3d at 1303.  Accordingly, Officer Aycock's motion to dismiss on the basis of qualified immunity is due to be denied.

The court emphasizes that it has based its qualified immunity analysis on the allegations of the complaint and amended complaint.  It may be that with further factual development Aycock will be able to demonstrate that he is entitled to qualified immunity. At this point, however, the court must conclude that the motion to dismiss on the basis of qualified immunity is due to be denied, without prejudice to Aycock's ability to again raise the defense in a properly filed motion for summary judgment, or at trial.

---

[9]The Eleventh Circuit had also recognized that rape of a person by a state actor or official can violate Fourteenth Amendment substantive due process rights and serve as the basis for a suit under § 1983.  *See, e.g., Griffin,* 261 F.3d at 1303; *Almand*, 103 F.3d at 1512; *Parker*, 862 F.2d at 1471.

17

**IV.**     **Conclusion**

For the reasons outlined above, the court agrees with the magistrate judge's report and recommendation in part, and finds that the report is due to be adopted, and the recommendation accepted, as it relates to the denial of Defendant's motions to dismiss Counts VII and IX.  However, the court disagrees with the magistrate's report and recommendation that Defendant's motions to dismiss be granted as to Counts I, II, and VIII and instead finds that Defendant's motion to dismiss is due to be denied as to those counts as well.   A separate order denying Defendant's motion to dismiss will be entered.

**DONE** and **ORDERED** this ___31st_____ day of January, 2007.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

18